### No. 11,785.

### HENRY S. PALFREY ET ALS. VS. J. W. AND W. P. FOSTER.

A party selling a tract of land and reserving the right to construct on his own land a connection or switch railroad with a road to be constructed over the land sold, a subsequent vendee of the party making the reservation can exercise no greater right than that reserved. Where the immediate vendee of the party constructs the road and builds it, there being nothing said as to its location, or the kind and character of the road, or when this is doubtful, the location of the road by said vendee, and the kind of road he builds, will conclude a purchaser from him, and he can demand no greater rights than those exercised by the purchaser under the original reservation.

APPEAL from the Seventeenth Judicial District Court for the Parish of St. Mary. *Allen, J.*

---

*L. F. Suthon* for Plaintiffs, Appellees, cites: C. C., Arts. 754, 755, 756; C. C., Art. 771; C. C., Arts. 798, 800, 789, 796, 653, 654; 5 An. 577; 37 An. 242; 39 An. 210.

*D. Caffery & Son* for Defendants, Appellants, cite: C. C., Arts. 1956, 743, 753, 1913, 1914.

Submitted on briefs, April 26, 1895.
Opinion handed down, May 6, 1895.
Rehearing refused, May 20, 1895.

The opinion of the court was delivered by

McENERY, J. On the 19th day of May, 1886, T. J. Foster sold certain immovable property in St. Mary parish to the Burdon Central Sugar Refinery Company. In the same act of sale he granted to the company "the right of way of the customary and necessary width, over, through and across the said plantation lands, lying on the west side of the public road, for the purpose of laying, making, and using, with sufficient and proper grade and ditches and necessary cattle gaps, a switch road connecting said lot herein conveyed to said corporation with the main line of Morgan's Louisiana & Texas Railroad on said plantation land." He reserved to himself "the right to make or cause to be made and built on his own lands such switch road connection with the said line of switch as hereinbefore set forth for any purpose and use as he may deem advisable, provided such connection shall in no manner obstruct or interfere, at any time, with the use by said corporation of the said switch connecting said lots with the said Morgan's Louisiana & Texas Railroad for the business purposes of said corporation, which said connection or switch road, built and made by the said Foster, or by him caused to be built and made, is to be, in so far as the same shall be located on his own lands, under his sole control, nor shall the said switch road, the right of way for which is herein granted to said corporation, for any purpose than for the transaction of a proper business, nor for the transportation of any materials or articles for any other purpose or corporation whatever."

On the 7th day of September, 1888, T. J. Foster sold to his sons, the defendants herein, a sugar plantation in the parish of St. Mary, known as the Shady Retreat plantation.

On the 14th day of April, 1891, the defendants sold to Reed McLane a part of the Shady Retreat plantation, acquired from their father, T. J. Foster. In the act of sale it recited "the said ven-

dors moreover transfering and conveying to the said McLane the right and privilege they now hold of connecting with and using the switch railroad now on the plantation lands of said vendors, belonging to the said sugar refinery, but guaranteeing no further or greater rights and privileges than as now by them held and as specified in the contract of May 19, 1886, made by Thomas J. Foster and L. Murray Ferris, representing the said Burdon refinery.''

Reed McLane constructed a tramway, or narrow gauge road, to the switch of the Burdon refinery, which is a broad gauge track. McLane subsequently made a cession of his property to his creditors, and at the syndic's sale the plaintiffs purchased the property, with its incidental rights of way, privileges, etc. The servitude granted by his vendors, of course, passed with the title.

The plaintiffs brought this suit to have ''recognized to its fullest extent the servitude claimed by petitioners, decreeing them the right to enter upon the lands of defendants to construct a switch road from their shingle mill, and connect with the switch road of the Burdon sugar refinery, over a practicable route, and with the least damage possible to the debtor's estate.''

The object of the suit is to change the location of the switch road made by McLane, as it is impractical to construct a broad gauge road on that route or line, the plaintiffs contending that a broad gauge road was contemplated by the parties granting the right of way.

There was judgment for plaintiffs, recognizing their right of way over defendants' land, on which to build a broad gauge switch, but rejecting their demand for damages for withholding the right of way.

The defendants filed an exception for the dismissal of the suit on the ground of a failure to put them in default, a prerequisite to the execution of the contract as to the right of way.

The suit is for a right of way, a servitude which had been granted and enjoyed, but not to the extent as claimed by plaintiffs that the grant warranted. The formal putting in default was not essential. The suit was a sufficient demand. Nor is there any demand for the violation of the contract, because of its inexecution.

It had been executed, but not to the extent claimed by plaintiffs.

The plaintiffs are suing for what they claim they purchased at a forced sale and which they allege defendants withheld from them.

There is undoubtedly some ambiguity in the contract as to the kind of road that McLane was permitted to build over the property of defendants.

As the contract is to be interpreted by the grant in the Act of May 19, 1886, by referring to the act we find that the words "connection" and "switch road" are used as synonimous terms. The act further says, "which said connection or switch road built and used by the said Foster, or by him caused to be built and made, is to be in so far as the same shall be located on his own lands under his sole control."

There was no obligation imposed upon Foster in favor of anybody to build a broad-gauge road. The reservation was made for his own benefit, and it was within his discretion to build any kind of road, and to locate the same on his own land, on any line he saw fit to place it.

McLane obtained from his vendors no greater right than Foster had reserved to himself. There was no designated route for the road. The principal contention here is to change the location of the road as fixed by McLane.

McLane located the present narrow gauge with the consent of defendants. One of the defendants says that McLane asked his permission to cut some oats from defendant's land, in order to run the line of road. He offered to compensate defendant for the destruction of the oats, who declined it, because the defendant had agreed to give him the right of way. The right of way having been granted, without specifying the direction or route of the road, the selection of it by McLane, with defendant's consent, is conclusive as to its location.

It is therefore ordered, adjudged and decreed, that the judgment appealed from be annulled, avoided and reversed, and it is now ordered that plaintiffs' demand be dismissed at their costs in both courts. It is further ordered that the location of the narrow-gauge road, as fixed by McLane, be maintained in favor of plaintiffs, with the right to construct thereon all needful and necessary works for the use and enjoyment thereof.